UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

HENRY OLIVER MCKINNON, III,

        Plaintiff,

v.

        Case No. 3:24-cv-478-JEP-LLL

LT. BIRDSONG,

        Defendant.

_____

## ORDER

### I. Status

Plaintiff Henry Oliver McKinnon, III, an inmate of the Florida penal system, initiated this action by filing a pro se Complaint for Violation of Civil Rights under 42 U.S.C. § 1983 (Doc. 1).[1] He is proceeding *in forma pauperis* ("IFP") on a Second Amended Complaint (Doc. 9). In the Second Amended Complaint, Plaintiff named four defendants in their individual and official capacities and he raised claims under the Eighth Amendment and several administrative codes. *Id.* at 1–3, 4, 5–7. As relief, he requested monetary damages, disciplinary action against two Defendants, and a "redo" on his state court criminal appeal and "freedom." *Id.* at 10–11. On December 13, 2024,

---

[1] For all pleadings and documents filed in this case, the Court cites to the document and page numbers as assigned by the Court's Electronic Case Filing System.

pursuant to its screening obligation, the Court dismissed Plaintiff's claims against the Secretary of Florida Department of Corrections, Sergeant Tollick, and the Head of Keefe Warehouse, dismissed all Plaintiff's official capacity claims against all defendants, and dismissed Plaintiff's requests for relief in the form of disciplinary actions against Defendants and immediate release. Doc. 10. Accordingly, the case is proceeding only on Plaintiff's Eighth Amendment excessive force claim against Defendant Lieutenant Birdsong ("Defendant") in his individual capacity. *See id.*

Before the Court is Defendant's motion to dismiss (Doc. 35; Motion). Plaintiff filed a response opposing the Motion (Doc. 37; Response). The Motion is ripe for review.

## II. Motion to Dismiss Standard

In ruling on a motion to dismiss, the Court must accept as true the factual allegations set forth in the complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 n.1 (2002); *see also Lotierzo v. Woman's World Med. Ctr., Inc.*, 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. *See Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff still must meet some minimal pleading requirements. *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1262-63 (11th Cir. 2004). Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant

2

fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Twombly*, 550 U.S. at 555 (internal quotations omitted); *see also Jackson*, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (quotations, citation, and original alteration omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." *Iqbal*, 556 U.S. at 678, 680. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

### III. Plaintiff's Allegations[2]

Plaintiff alleges that on January 4, 2024, while detained at Florida State Prison (FSP), Defendant tried speaking to Plaintiff while he was on the toilet, and Plaintiff asked him to go away. Doc. 9 at 5. Plaintiff states that Defendant got mad because Plaintiff refused "his homosexual demands and orders." *Id.* According to Plaintiff, Defendant "mace[d]" him, and ordered a five-man team to beat him, attempt to "knock out [his] left eyeball," and rob him. *Id.* at 5–6, 10, 12. Plaintiff alleges the use of force resulted in eight or nine stitches over his left eye, a twisted right ankle, and "serious pain" to his left wrist. Id. at 10.

### IV. Discussion

Defendant argues the Court should dismiss the claims against him because: (1) Plaintiff has failed to exhaust his administrative remedies; (2) Plaintiff failed to disclose litigation history; (3) Plaintiff failed to state a claim; (4) Plaintiff failed to allege more than de minimus injury; and (5) punitive damages are statutorily barred. *See generally* Motion.

---

[2] Because this case is proceeding only as to the Eighth Amendment claim against Lt. Birdsong for excessive use of force, the Court focuses its summary on the allegations involving that claim.

## A. Exhaustion of Administrative Remedies

### 1. PLRA Exhaustion

The Prison Litigation Reform Act (PLRA) requires exhaustion of available administrative remedies before a 42 U.S.C. § 1983 action regarding prison conditions may be initiated by a prisoner in a district court. *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 . . . until such administrative remedies as are available are exhausted."); *see also Woodford v. Ngo*, 548 U.S. 81, 92-93 (2006) (noting that a prisoner must exhaust administrative remedies before challenging the conditions of confinement, and concluding that the PLRA demands "proper exhaustion"). Still, prisoners are not required to "specially plead or demonstrate exhaustion in their complaints." *See Jones v. Bock*, 549 U.S. 199, 216 (2007). Instead, the United States Supreme Court has recognized that "failure to exhaust is an affirmative defense under the PLRA[.]" *Id.*

Importantly, exhaustion of available administrative remedies is "a precondition to an adjudication on the merits[.]" *Bryant v. Rich*, 530 F.3d 1368, 1374 (11th Cir. 2008); *see also Jones*, 549 U.S. at 211. The Supreme Court has instructed that while "the PLRA exhaustion requirement is not jurisdictional[,]" *Woodford*, 548 U.S. at 101, "exhaustion is mandatory . . . and unexhausted claims cannot be brought[.]" *Pavao v. Sims*, 679 F. App'x 819, 823

(11th Cir. 2017)[3] (citing *Jones*, 549 U.S. at 211). Not only is there a recognized exhaustion requirement, "the PLRA . . . requires proper exhaustion" as set forth in the applicable administrative rules and policies of the institution. *Woodford*, 548 U.S. at 93.

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)."

*Id.* at 90 (citation omitted). Indeed, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules[.]" *Id.*

In *Ross v. Blake*, the Supreme Court instructed that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement. The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" 578 U.S. 632, 648 (2016). For an administrative remedy to

---

[3] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. *See McNamara v. Gov't Emps. Ins. Co.*, 30 F.4th 1055, 1060–61 (11th Cir. 2022); *see generally* Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

be available, the "remedy must be 'capable of use for the accomplishment of [its] purpose.'" *Turner v. Burnside*, 541 F.3d 1077, 1084 (11th Cir. 2008) (quoting *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1322-23 (11th Cir. 2007)). In *Ross*, the Court identified three circumstances in which an administrative remedy would be considered "not available." *Ross*, 578 U.S. at 643. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* Next, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." *Id.* Finally, a remedy may be unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 644.

Because failure to exhaust administrative remedies is an affirmative defense, the defendant bears "the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." *Turner*, 541 F.3d at 1082. The Eleventh Circuit has articulated a two-step process that district courts must employ when examining the issue of exhaustion of administrative remedies.

> In *Turner v. Burnside* we established a two-step process for resolving motions to dismiss prisoner lawsuits for failure to exhaust. 541 F.3d at 1082. First,

> district courts look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true. The court should dismiss if the facts as stated by the prisoner show a failure to exhaust. *Id.* Second, if dismissal is not warranted on the prisoner's view of the facts, the court makes specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust. *Id.* at 1082–83; *see also id.* at 1082 (explaining that defendants bear the burden of showing a failure to exhaust).

*Whatley v. Warden, Ware State Prison*, 802 F.3d 1205, 1209 (11th Cir. 2015).

The FDOC provides inmates with a three-step grievance process for exhausting administrative remedies. As the Eleventh Circuit has described it:

> The grievance procedure applicable to Florida prisoners is set out in § 33-103 of the Florida Administrative Code. Section 33-103 contemplates a three-step sequential grievance procedure: (1) informal grievance; (2) formal grievance; and then (3) administrative appeal. *Dimanche*, 783 F.3d at 1211. Informal grievances are handled by the staff member responsible for the particular area of the problem at the institution; formal grievances are handled by the warden of the institution; and administrative appeals are handled by the Office of the Secretary of the FDOC. *See* Fla. Admin. Code. §§ 33-103.005–103.007. To exhaust these remedies, prisoners ordinarily must complete these steps in order and within the time limits set forth in § 33-103.011, and must either receive a response or wait a certain period of time before proceeding to the next step. *See id.* § 33-103.011(4).

*Pavao*, 679 F. App'x at 824.

According to Rule 33-103.014, an informal grievance, formal grievance,

8

direct grievance, or grievance appeal "may be returned to the inmate without further processing if, following a review of the grievance, one or more . . . conditions are found to exist." Fla. Admin. Code R. 33-103.014(1). The rule provides an enumerated list as "the only reasons for returning a grievance without a response on the merits." *See* Fla. Admin. Code R. 33-103.014(1)(a)–(y). A grievance can be returned without action if it: is untimely; "addresses more than one issue or complaint"; is "so broad, general or vague in nature that it cannot be clearly investigated, evaluated, and responded to"; is "not written legibly and cannot be clearly understood"; is a supplement to a previously-submitted grievance that has been accepted for review; does not "provide a valid reason for by-passing the previous levels of review as required or the reason provided is not acceptable"; or does not include the required attachments. *See* Fla. Admin. Code R. 33-103.014(1).

### 2. The Parties' Positions Regarding Exhaustion

In his Second Amended Complaint, Plaintiff asserts he exhausted his administrative remedies as to his Eighth Amendment claim against Defendant. *See* Doc. 9 at 11–13. Presumably in support of his claim of exhaustion, Plaintiff attached Informal Grievance 205-2409-0679. *Id.* at 9.

Defendant, however, argues Plaintiff failed to exhaust his administrative remedies with respect to any Eighth Amendment claim. Motion at 5–7. Specifically, Defendant states the attached Informal Grievance does not

grieve the issue remaining in his Second Amended Complaint. *Id.* at 5. Defendant further states that Plaintiff submitted no "informal or formal grievances complaining of improper sexual conduct by any officer" and likewise provided evidence that he submitted no informal or formal grievance from January 4, 2024, to the date of filing, which grieved the use of excessive force on January 4, 2024. *Id.* at 7; Doc. 35-1 at 1, 4, 9. Defendant suggests that while Plaintiff submitted three appeals, only two of those appeals reference the January 4, 2024 incident, and of those two, they both grieve the property loss, not excessive use of force. Motion at 7.

With his Motion, Defendant provides declarations and records regarding Plaintiff's exhaustion efforts. *See* Docs. 35-1 through 35-4. In a sworn declaration, Teresa Winstead, a grievance coordinator at Charlotte Correctional Institution, states that between January 4, 2024 and May 2, 2024, Plaintiff submitted fifteen informal grievances and one formal grievance, and that not one of those grievances "related to PREA allegations or excessive use of force that occurred on January 4, 2024." Doc. 35-1 at 1. Lawanda Sanders-Williams, an Operations Analyst for the FDOC Bureau of Policy Management and Inmate Appeals, states that in the same time period, Plaintiff filed two appeals "related to the allegations raised in his complaint," one of which was returned without action, and the second which "appealed two informal grievances related to property return, and only referenced the January 4, 2024

10

incident." Doc. 35-3 at ¶¶2–3. All grievances and appeals were attached to the relevant declarations. *See* Docs. 35-1 at 4–30; 35-3 at 6–19.

Defendant also submitted a declaration from Assistant Warden of Programs at FSP, Jeffrey McClellan, who states that the grievance process at Florida State Prison "is designed in such a manner that there is no hinderance nor impediment to any inmate's utilization of the grievance procedure at any level." Doc. 35-2 at ¶2. As support, McClellan outlines the procedure for submission of grievances. *Id.* at 1–2. McClellan states that every day a staff member walks around to collect the grievances with a locked box, which has a slot only big enough to slip the grievances inside, and that if an inmate has a grievance the inmate will hold it up to the flap or window then either place it into the box or have the staff member place it in the box while in the inmate's view. *Id.* at ¶¶3–4. McClellan explains the staff member will continue through the wing, before continuing to the next wing or to return the box to the grievance coordinator. *Id.* at ¶5. According to McClellan,

> At no point can any staff member open the grievance box to remove grievances or prevent an inmate from placing a grievance into the box without being viewed on video and breaking FDC policy. The only person with a key who can open the grievance box is the grievance coordinator or other assigned staff member by the Warden, who would not go on the wing.

*Id.* at ¶¶6–7. McClellan states that the grievance coordinator then unlocks the box, removes the grievances, logs the grievances, and then sends the

11

grievances to the appropriate respondents. *Id.* at ¶8.

In his Response, Plaintiff states that Defendant "lied by saying that [Plaintiff] never fully exhausted all [his] (DOC) Administrative [remedies]" and that he did exhaust the remedies  as "clearly show[n]" by Docs. 35-3 and 35-4. Response at 2. Plaintiff states he exhausted his claim "under main grievance #2401-205-180 and even past that to risk management" but that he waited 90 days and never received a response. *Id.* He also requests this Court "listen to[]" the declaration of Mr. Bass, and ask what happened to the inspector general investigation. *Id.* at 3.

### 3. *Turner* Step One

Under the first step of the *Turner* analysis, the Court must review the allegations in the Motion and Response and accept as true Plaintiff's allegations. *See Whatley*, 802 F.3d at 1209. If Plaintiff's allegations in the Response show a failure to exhaust, then dismissal would be appropriate. *See id.*

Accepting Plaintiff's allegations that he exhausted these claims through grievances and that some attempts to alert the officials to these allegations went without response, the Court finds dismissal of the claims against Defendant for lack of exhaustion is not warranted at the first step of *Turner*. Thus, the Court proceeds to the second step of the two-part process and considers the Defendant's arguments about exhaustion and makes findings of

12

fact.

### 4. *Turner* Step Two

As dismissal would not be appropriate based on the allegations in the Motion and Response, the Court turns to the second prong of the *Turner* analysis and finds Plaintiff had available administrative remedies that he failed to properly exhaust before filing this action. The purpose of administrative exhaustion "is to put the [administrative authority] on notice of all issues in contention and to allow the [authority] an opportunity to investigate those issues." *Chandler v. Crosby*, 379 F.3d 1278, 1287 (11th Cir. 2004) (quotations and citation omitted) (alterations in original). However, to properly exhaust administrative remedies, "prisoners must complete the administrative review process in accordance with the [prison's] applicable procedural rules," *Jones v. Bock*, 549 U.S. 199, 218 (11th Cir. 2007) (quotation marks omitted). Moreover, prisoners must "properly take each step within the administrative process." *Bryant v. Rich*, 530 F.3d 1368, 1378 (11th Cir. 2008). The FDOC's rules require that informal and formal grievances be legible, include accurately stated facts, and address only one issue or complaint; however, it does not include any requirements regarding the level of detail required for grievances. Fla. Admin. Code. R. 33-103.005(2)(b)2; 33-103.006(2)(d)-(f). Where a prison's grievance procedure does not require a certain level of specificity, "a grievance suffices if it alerts the prison to the

13

nature of the wrong for which redress is sought." *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002), *overruled in part on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007); *see Harvard v. Inch*, 411 F. Supp. 3d 1220, 1244 (N.D. Fla. 2019).[4]

Initially, a review of all of Plaintiff's informal and formal grievances shows that none of the grievances mention any excessive use of force or sexual harassment by Defendant. *See* Doc. 35-1 at 4–30. While Plaintiff alleges he exhausted his claim "under main grievance #2401-205-180," a review of that grievance demonstrates Plaintiff was grieving the loss of property, not any excessive use of force. *Id.* at 6 ("Dear: Head warden at FSP, *this [is] all about my missing stolen property . . .*") (emphasis added). This grievance thus would not have provided prison officials notice of any alleged excessive use of force or sexual misconduct. Similarly, the grievance attached to his Second Amended Complaint also grieves property loss. *See* Second Amended Complaint at 9. Moreover, that grievance was submitted *after* Plaintiff initiated this action, and, thus, could not form the basis of exhaustion even if it contained the allegations raised within his Second Amended Complaint. *See McDaniel v.*

---

[4] The Court notes that although decisions of other district courts are not binding, they too may be cited as persuasive authority. *See Stone v. First Union Corp.*, 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects.").

14

*Crosby*, 194 F. App'x 610, 613 (11th Cir. 2006) ("To the extent [plaintiff] relies upon the grievances and appeals he submitted after filing his initial complaint, such grievances and appeals cannot be used to support his claim that he exhausted his administrative remedies, because satisfaction of the exhaustion requirement was a precondition to the filing of his suit."). Accordingly, no informal or formal grievance submitted by Plaintiff grieved the claim remaining in this action.

Plaintiff also filed three appeals between January 4, 2024 and May 5, 2024. Doc. 35-3 at 4. Appeal 4-6-05109 involves the rejection of a magazine subscription, does not reference the January 4 incident or Defendant, and cannot be said to grieve the remaining claim for relief. *See* Doc. 35-3 at 4, 8–12. Appeal 24-6-02496 discusses the January 4, 2024 incident and appears to grieve both the use of force as well as property loss. *Id.* at 7. However, a prison official returned Appeal 24-6-02496 without action because the appeal grieved more than one issue and should have been initiated at the informal level. *Id.* at 6. Because Plaintiff failed to follow the procedural rules and take each step in the administrative process, Plaintiff did not properly exhaust his administrative remedies through Appeal 24-6-02496. *See Woodford*, 548 U.S. at 90; *Jones*, 549 U.S. at 218; *see also Hersh v. Scott*, No. 3:22-CV-408-BJD-LLL, 2023 WL 2242551, at *2–3 (M.D. Fla. Feb. 27, 2023) (finding that where

grievances were returned without action, "they d[id] not satisfy the exhaustion requirement").

Lastly, Plaintiff submitted Appeal 24-6-06305, which states:

> This is [a] New Appeal motion for Secretary of (DOC) very illegal injustic[e] last January 25, 2024[] Denied Judgement under last grievance Log #2401-205-180. Because original attcha [sic] informal grievance Log # 205-2309-0442 where I got approved by Sgt[.] Tollick here at FSP on Sep[t]. 18th, 2023. After this above date of August 28th 2023 clearly proved that I still had personal property stored in property room here at FSP. And this still don[']t justify the fact that on January []4th, 2024 when I got mace and gas and the (5) man Doom squ[ad] Team ran on me and had to[] get 8 or 9 stitches. Please over my left eye and place[d] on strip for (4) day. All because I refuse L.T. Birdsong homosexual advances against my manhood why [sic] in M-Dorm/cell#1205 and got move[d] to[] this new room im [sic] currently still in now in C-Dorm/cell #1127. Just replay cam[e]ra footage between hours of 8:00 to[] 12:15 in morning time on January []4, 2024 for proof that L.T. Birdsong did everything i [sic] just explain[ed] above and then stole all of my personal property and threw away all of my trial court transcripts and Legal paperwork And new cartoon comic books, magazine, hygenies [sic] and canteen food items – which have cause[d] over a (9) Thousand Dollar hardship Against my freedom and pending case and Appeal in Life under Two my case [numbers] 5D23-2352 from 5th DCA. And New Florida Supreme court case [number] SC2024-0108 whats [sic] still pending right now under rehearing. So now (DOC) Rule of Conduct Chapter #33 608.002 ver#19 do full apply because no officers should willing tell untruth.

Doc. 35-3 at 14. Prison official, Donald Bass, replied to the grievance as follows:

16

> Your administrative appeal has been reviewed and evaluated. The response that you received in the informal grievance at the institutional level has been reviewed and is found to appropriately address the concerns that you raised at the institutional level as well as the Central Office level.
>
> Your appeal has been reviewed and evaluated. The subject of your grievance was previously referred to the Office of the Inspector General. It is the responsibility of that office to determine the amount and type of inquiry that will be conducted. This inquiry/review may or may not include a personal interview with you. Upon completion of this review, information will be provided to the appropriate administrators for final determination and handling.
>
> Your administrative appeal is denied.

*Id.* at 13.

By Plaintiff's own statement, Appeal 24-6-06305 was an appeal of the "illegal" denial of Formal Grievance 2401-205-180 and Informal Grievance 205-2309-0442. As discussed above, Formal Grievance 2401-205-180 grieved the loss of property, as did Informal Grievance 205-2309-0442. *See id.* at 15 ("[I] would like for u [sic] to please bring me my [property] . . . I need all of my missing property"). Thus, this Appeal of those grievances was sufficient to notify prison officials of the nature of the wrong for which redress was sought: property loss. While it mentions the January 4, 2024 use of force in the middle of the appeal, this appeal cannot be said to seek any redress for the wrong of excessive force, particularly considering Plaintiff had not even mentioned the

17

use of force in the relevant underlying grievances. Moreover, the respondent of this grievance indicated he denied the appeal "in response to Inmate McKinnon's appeal of informal grievances related to property issues. Because Inmate McKinnon referenced another issue in his appeal, I also advised him on the Inspector General investigative process." This further demonstrates the reviewer considered this appeal a matter of "property issues." Doc. 35-4 at ¶3. Accordingly, the Court does not find this Appeal sufficient to exhaust the remaining Eighth Amendment claim.

The Court notes that an investigation by the Office of the Inspector General (OIG) may be relevant to the exhaustion analysis when a referral to the OIG is *the result* of a plaintiff's properly filed grievance. *See Hersh*, 2023 WL 2242551, at *3–4 (noting that generally whether a grievance is approved or denied, the plaintiff exhausts his administrative remedies where he or she filed a grievance and the allegations are referred to the OIG "in response to that grievance," but finding no exhaustion because there was no evidence that the OIG investigation "resulted from Plaintiff having filed a proper grievance in compliance with the FAC"); *Ham v. Salmon*, No. 20-cv-81071-RAR, 2022 WL 1555080, at *4 (S.D. Fla. May 17, 2022) ("Federal district courts throughout the State of Florida have found that a prisoner exhausts his administrative remedies if he or she starts the grievance process set forth in the Florida Administrative Code *and then* has that grievance referred to the OIG."

18

(emphasis in original)); *Fleming v. Espino*, No. 3:20-CV-853-MMH-JRK, 2021 WL 5083743, at *7 (M.D. Fla. Nov. 2, 2021) (concluding the OIG investigation was irrelevant to the exhaustion analysis where there was no indication the investigation resulted from a grievance filed by the prisoner). Here, the official's response indicates that his use of force allegations were "previously referred" to the OIG, and there is no evidence that the referral was made in response to any properly filed grievance. Accordingly, the Court finds Defendant has met his burden to show there was an available administrative remedy available to Plaintiff, and Plaintiff failed to complete the available process to exhaust his claim.

To the extent Plaintiff may be suggesting the grievance process was unavailable to him based on his conclusory allegations that he "filed all the way up to Bureau of Policy Management and Inmate Appeals. . . and . . . to[] Risk Management" but did not receive a response, the Court finds Plaintiff's argument fails. "While the burden is on the defendant to show an available administrative remedy, once that burden has been met, the burden of going forward shifts to the plaintiff, who, pursuant to *Turner*, must demonstrate that the grievance procedure was 'subjectively' and 'objectively' unavailable to him." *Geter v. Baldwin State Prison*, 974 F.3d 1348, 1356 (11th Cir. 2020) (citing *Turner*, 541 F.3d at 1085); *id.* at 1356 n.14 ("But once the [prison official] has established that the inmate failed to resort to administrative

19

remedies, the onus falls on the inmate to show that such remedies were unavailable to him." (quoting *Rinaldi v. United States*, 904 F.3d 257, 268 (3d Cir. 2018))). First, any vague assertion of unavailability by Plaintiff is belied by his history of filing grievances. As stated previously, during the time period at issue, Plaintiff submitted 15 informal grievances, 1 formal grievance, and three appeals. *See* Docs. 35-1 at 1; 35-3 at 1, 4. All of these grievances produced responses. *See* Doc. 35-1 at 4–30; Doc. 35-3 at 6–19. Plaintiff's grievance record during the relevant time period undercuts any assertion that his efforts were thwarted by prison officials. *See Whatley v. Smith*, 898 F.3d 1072, 1083 (11th Cir. 2018) (holding the district court properly considered the plaintiff's history of filing grievances "as evidence that the defendants did not make administrative remedies unavailable to him or lose or destroy his grievances."). This is particularly true where the use of force incident had been referred to the OIG at some point, showing that prison officials were not simply trying to thwart his efforts to bring that issue to light. Second, Plaintiff provides no details about his attempts which allegedly yielded no responses, such as when or how he submitted them, what he wrote in them, or how they would have been different from those discussed here. To the extent that Plaintiff is suggesting these were actual grievances that may be missing from those presented here, it strains credulity that there were grievances related to the allegations in this action that were not routed to the grievance coordinator

20

given that he successfully filed so many other grievances and considering the process as outlined in the McClellan declaration. Even if his attempts were in the form of grievances, Plaintiff does not state he attempted to proceed to the next step of the grievance process when he did not receive a timely response from the appropriate prison official. *See* Fla. Admin. Code R. 33-103.011(4) (notifying inmates how to proceed if they do not receive a timely response to a grievance at any step: expiration of a time limit at any step in the process shall entitle [an inmate] to proceed to the next step of the grievance process"); *see also Turner*, 541 F.3d at 1084 (finding that a prison's failure to respond to a formal grievance did not relieve the prisoner of his obligation to file an appeal when the grievance procedure provided that prisoners could file an appeal if they did not receive a response to a formal grievance within thirty days.). If Plaintiff's attempts were letters to these individuals outside of the grievance process, they are irrelevant to the exhaustion analysis. *See Pavao*, 679 F. App'x at 825 (quoting *Dimanche v. Brown*, 783 F.3d 1204, 1210 (11th Cir. 2015)) ("Pavao's efforts to seek redress from the Florida state courts or the Inspector General of the FDOC are not relevant to the question of exhaustion because they are not part of the prison grievance procedure, and therefore are outside the 'boundaries of proper exhaustion.' "); *Schlicher v. Fla. Dep't of Corr.*, 399 F. App'x 538, 539 (11th Cir. 2010) (rejecting the plaintiff's argument that writing letters to the Secretary of the FDOC, a federal judge, and the inspector general,

21

and making verbal complaints to various prison officials, were sufficient to satisfy the exhaustion requirement). Accordingly, Plaintiff therefore fails to demonstrate that the grievance process was unavailable to him.

For the above reasons, the Court finds Defendant has carried his burden to demonstrate Plaintiff did not exhaust his administrative remedies for the Eighth Amendment claim remaining before the Court. Accordingly, Plaintiff's Eighth Amendment claim of excessive use of force is due to be dismissed.

## B. Defendant's Additional Arguments for Dismissal

Because Plaintiff's only remaining claim against Defendant is due to be dismissed for failure to satisfy the PLRA's exhaustion requirement, the Court need not address Defendant's arguments that Plaintiff failed to disclose his litigation history, failed to state a claim, failed to allege more than de minimus injury, and is barred from recovering punitive damages.

## C. Request to Revoke IFP Status

Defendant also asks the Court to revoke Plaintiff's IFP status. Defendant cites to three cases to suggest Plaintiff is barred from proceeding as a pauper under 28 U.S.C. § 1915(g): (1) *McKinnon v. St. Johns Cnty.*, No. 3:11-cv-1028 (M.D. Fla. Oct. 27, 2011); (2) *McKinnon v. St. Johns Cnty.*, No. 11-15342-B (11th Cir. 2012); and (3) *McKinnon v. Sec'y, Fla. Dep't of Corr., et al.*, No. 3:13-cv-553 (M.D. Fla. Oct. 31, 2013).

22

Initially, the Court notes Defendant cites no case law to support his request for revocation of Plaintiff's IFP status, and the Court finds none. The Eleventh Circuit has stated, "Once a district court has made an initial finding of imminent danger, it retains the authority to revisit that determination and revoke IFP status when new evidence bearing on the IFP determination comes to light." *McLeod v. Sec'y, Fla. Dep't of Corr.*, 778 F. App'x 663, 665 (11th Cir. 2019). However, that is not the situation here. Defendant seems to merely disagree with the Court's September 23, 2024 order. Finding no legal basis to revoke Plaintiff's IFP status at this stage, the Court denies the request.

Accordingly, it is

**ORDERED:**

1.    Defendant's Motion to Dismiss (Doc. 35) is **GRANTED** to the extent that Defendant seeks dismissal for Plaintiff's failure to exhaust his administrative remedies. In all other respects, the Motion is denied without prejudice.

2.    The Clerk shall enter judgment dismissing all remaining claims in this case without prejudice, terminate any pending motions, and close the case.

23

**DONE AND ORDERED** at Jacksonville, Florida, this 8th day of May, 2026.

JORDAN E. PRATT
UNITED STATES DISTRICT JUDGE

JaxP-12
C:    Henry Oliver McKinnon, J28012
      Counsel of Record

24